Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL III

| | | |
|---|---|---|
| LILIA MOLINA RUIZ<br><br>Recurrida<br><br>V.<br><br>ESTADO LIBRE ASOCIADO DE PUERTO RICO<br><br>Peticionaria | | *Mandamus* procedente del Tribunal de Primera Instancia, Sala de Bayamón<br><br>Caso Núm. D AC2016-1155 (502)<br><br>Sobre: Impugnación de confiscación |
| LILIA MOLINA RUIZ<br><br>Recurrida<br><br>V.<br><br>ESTADO LIBRE ASOCIADO DE PUERTO RICO<br><br>Recurrido<br><br>MUNICIPIO AUTÓNOMO DE BAYAMÓN<br><br>Peticionario | KLRX202300005<br><br>Consolidado con<br><br>KLCE202300195 | *Certiorari* procedente del Tribunal de Primera Instancia, Sala de Bayamón<br><br>Caso Núm. D AC2016-1155 (502)<br><br>Sobre: Impugnación de confiscación |

Panel integrado por su presidente, el Juez Figueroa Cabán, la Jueza Grana Martínez y el Juez Monge Gómez[1].

Grana Martínez, Jueza Ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 31 de mayo de 2023.

El peticionario, Municipio Autónomo de Bayamón, presentó el recurso de certiorari KLCE202300195, para que revisemos la decisión del Tribunal de Primera de Instancia de no permitirle intervenir en la impugnación de confiscación.

El Gobierno de Puerto Rico presentó el recurso de mandamus KLRX20230005 en el que solicita que ordenemos al TPI a cumplir

---

[1] Mediante Orden Administrativa OATA-2023-031, se modificó la integración del Panel debido a inhibición del Juez Fernando L. Rodríguez Flores.

con el deber ministerial de resolver la moción de reconsideración del 7 de septiembre de 2016.

El 17 de febrero de 2023 ordenamos la paralización del caso en el TPI.

El Gobierno de Puerto Rico solicitó la consolidación urgente porque ambos recursos giran en torno a la orden de entregarle a la recurrida los animales bajo la custodia del Municipio.

La consolidación procede porque en ambos recursos se cuestiona que el TPI hizo efectiva la sentencia, a pesar de que nunca atendió la moción de reconsideración y de que existe falta de parte indispensable.

**I.**

Los hechos pertinentes para atender y resolver este recurso son los siguientes.

El 8 de octubre de 2015, el agente Eliezer Cruz Pagán observó unos animales con la movilidad restringida y expuestos al agua y sol, sin donde refugiarse. Todos los animales se veían sucios y enfermos.

El 9 de octubre de 2015, el Tribunal expidió una Orden de Registro o Allanamiento en la propiedad ubicada en la Carr. 812, Bo. Dajaos, Camino Antosanti en Bayamón. La orden se expidió a base de la declaración jurada del agente Eliezer Cruz Pagán que observó: ocho canes, dos ponis, un burro y varios caballos en una residencia que aparentaba estar abandonada. El agente vio un can con poca movilidad, atado con un cable bien pegado a las rejas del balcón de un segundo piso. Otros canes estaban expuestos a la lluvia y al sol y no tenían donde refugiarse. El lugar estaba en total abandono, sucio y mal oliente. Todos los animales se veían sucios y enfermos. El agente declaró que estaba lloviendo y los caballos no tenían donde refugiarse. Cruz Pagán declaró que habló con una vecina que se identificó como Zoe Cruz Gil. Esta vecina le dijo que

era rescatista, que el problema existía hacia aproximadamente un año y que las gestiones que hizo con la policía para que removieran los animales fueron infructuosas. La señora Cruz le dijo que la dueña de los animales era Lilia Molina Ruiz y le dio su dirección. El agente fue dos veces a esa dirección, pero no salió nadie. Posteriormente acudió a la Fiscalía de Bayamón, porque los animales estaban en un estado crítico y podían morir. El fiscal Jesús Soto autorizó solicitar una Orden de Allanamiento para que todos los animales se removieran de la propiedad. Véase, pág. 232 del apéndice.

El 15 de octubre de 2015, la Policía de Puerto Rico ocupó los animales pertenecientes a la señora Lilia Molina Ruiz, por violación a la Ley para el Bienestar y la Protección de los Animales, Ley Núm. 154 de 2008.

El 1 de febrero de 2016, la señora Molina presentó una demanda contra el Estado Libre Asociado de Puerto Rico, en la que impugnó la confiscación. La demandante alegó que la Orden de Registro y Allanamiento era nula e ineficaz de su faz. Además, alegó que la confiscación era nula porque el Estado no la notificó dentro del término jurisdiccional establecido. Véase, pág. 228 del apéndice.

El Gobierno de Puerto Rico pidió la desestimación del pleito, porque de las alegaciones de la demanda era evidente que no confiscó los animales y que la demandante los entregó voluntariamente al Municipio Autónomo de Bayamón. El apelante argumentó que el tribunal autorizó el registro y allanamiento al amparo de la Ley de Maltrato de Animales. El Gobierno sostuvo que no tenía que notificar a la demandante de la confiscación, porque nunca confiscó su propiedad. Véase, pág. 193 del apéndice.

El 18 de agosto de 2016, el TPI dictó sentencia sumaria a favor de la señora Molina. El foro primario aplicó por analogía el Art. 1671 de la Ley Núm. 154, *supra,* en el que se autoriza la confiscación de

gallos de pelea conforme a la Ley Uniforme de Confiscaciones. El tribunal resolvió a base de ese artículo que la Ley Núm. 154, *supra,* se rige según lo establecido en la Ley Uniforme de Confiscaciones. No obstante, determinó que el Gobierno no probó de forma fehaciente que la demandante fue acusada por infracción a la Ley Núm. 154, *supra*. Finalmente resolvió que el Estado incumplió con la notificación requerida y tampoco realizó una investigación conducente a obtener una orden de confiscación dentro del término de 90 días. Por consiguiente, declaró nula la confiscación. Véase, pág. 149 del apéndice.

El Estado presentó una *Moción de Relevo de Sentencia,* en la que alegó que: (1) la demandante no tiene legitimación activa conforme a la Ley de Confiscaciones, (2) el Estado no confiscó los animales y (3) el Municipio Autónomo de Bayamón era una parte indispensable que no había sido incluido en el pleito. Véase, pág. 135 del apéndice.

El 6 de febrero de 2017, el TPI denegó la solicitud de reconsideración. Véase, pág. 118 del apéndice. La decisión se notificó el 13 de febrero de 2017. El 21 de marzo de 2017, el TPI enmendó la notificación para incluir al Departamento de Justicia porque no fue notificado originalmente. El Gobierno solicitó reconsideración a la decisión de no autorizar el relevo de sentencia. El TPI denegó la reconsideración. El Gobierno acudió al Tribunal de Apelaciones donde alegó que el TPI nunca atendió la moción de reconsideración a la sentencia sumaria.

El 8 de junio de 2017, el Tribunal de Apelaciones revocó al TPI, le devolvió el caso para que atendiera la moción de reconsideración y dejó sin efecto la orden notificada el 21 de marzo de 2017. Véase, pág. 94 del apéndice.

El 17 de noviembre de 2017, el TPI declaró no ha lugar la reconsideración. Sin embargo, a esa fecha carecía de jurisdicción,

porque el caso estaba paralizado debido a la Ley PROMESA. Véase, pág. 91 del apéndice.

El 23 de noviembre de 2022, la señora Molina alegó que obtuvo un *relief* o *stay* y solicitó la continuación de los procedimientos y la entrega de los animales.

El Gobierno alegó que la sentencia era nula, debido a la ausencia de parte indispensable. El apelante adujo que el Municipio de Bayamón era parte indispensable, porque tiene la custodia de los animales. Además, adujo que la orden del 17 de noviembre de 2017 era nula porque se dictó durante la paralización de la Ley PROMESA. El Gobierno alegó que la Ley Uniforme de Confiscaciones no aplica, porque los animales nunca fueron confiscados. Según el apelante, no existe una orden de confiscación, los animales no se entregaron a la Junta de Confiscaciones y no se tasaron y la confiscación no se notificó a las partes interesadas. Véase, pág. 53 del apéndice.

El Municipio Autónomo de Bayamón solicitó autorización para intervenir en el pleito. El peticionario alegó que es el propietario y dueño de los animales, porque el 15 de octubre de 2015, la señora Molina le entregó voluntariamente los 9 caballos y cuatro burros. El Municipio adujo que la señora Molina firmó un documento de Relevo de Responsabilidad, luego de ser orientada de las implicaciones de la Ley para el Bienestar y la Protección de los Animales. Véase, pág. 21 del apéndice del certiorari. El peticionario alegó que la señora Molina tiene que pagarle $371,935.90, por los gastos en que incurrió para el cuidado de los animales, si es que el tribunal ordena su devolución. El Municipio adujo que su intervención es necesaria, porque la controversia incide sobre los fondos públicos municipales y su interés propietario sobre los animales, derecho que la señora Molina perdió cuando se los entregó. Véase, pág. 8 del apéndice del certiorari.

El 7 de febrero de 2023, el TPI denegó la intervención del Municipio, porque el caso versa estrictamente sobre una impugnación de confiscación. El tribunal señaló que el Municipio podía presentar sus reclamos en un pleito independiente de cobro de dinero. Véase, pág. 7 del apéndice del certiorari.

El TPI denegó la moción de reconsideración que presentó el Gobierno. El 10 de febrero de 2023, el TPI ordenó al Gobierno de Puerto Rico que entregara los animales.

Inconforme, el Municipio presentó el recurso que nos ocupa en el que alega que:

ERRÓ EL TPI AL DENEGAR LA SOLICITUD DE INTERVENCIÓN PRESENTADA POR EL MUNICIPIO.

## II.

## A.

La falta de jurisdicción es la autoridad o poder del tribunal para atender y decidir un caso o controversia. Las cuestiones de jurisdicción son privilegiadas y deben resolverse con preferencia. Los tribunales no tienen discreción para asumir jurisdicción donde no existe. Los asuntos jurisdiccionales deben atenderse con primacía, porque una sentencia dictada sin jurisdicción es nula. La falta de jurisdicción obliga al tribunal a desestimar la reclamación sin entrar en sus méritos. *Metro Senior v. AFV,* 209 DPR 203, 208-209 (2022).

## B.

La Regla 16. 1 de Procedimiento Civil, 32 LPRA Ap. V, establece que, aquellas personas que tienen un interés común y sin cuya presencia no puede adjudicarse la controversia, se acumularán como demandantes o demandados, según corresponda. Una parte indispensable es aquella cuya presencia es imprescindible para adjudicar la controversia correctamente, porque de lo contrario, sus derechos quedarían afectados. La Regla 16.1, *supra,* es parte del

esquema constitucional que prohíbe que una persona sea privada de la libertad y propiedad, sin el debido proceso de ley. Además, garantiza que el dictamen judicial emitido sea completo. El interés de la parte indispensable en el pleito no es cualquiera. Su ausencia, imposibilita la confesión de un derecho adecuado, sin que sus intereses resulten afectados o destruidos. El interés común al que se refiere la Regla 16.1, *supra*, tiene que ser real e inmediato y no puede ser futuro ni especulativo. *López García v. López García,* 200 DPR 50, 63-64 (2018).

La determinación final de si parte debe acumularse en un pleito, depende de los hechos específicos de cada caso. La decisión exige evaluar factores como tiempo, lugar, modo, alegaciones, prueba, clase de derechos, intereses en conflicto, resultado y formalidad. Los tribunales tienen que hacer un análisis juicioso de los derechos de la parte ausente y de las consecuencias de que se unan al proceso. La pregunta fundamental es si el tribunal puede hacer justicia y conceder un remedio final y completo a las partes presentes, sin afectar los derechos de la parte ausente. La falta de parte indispensable constituye una defensa irrenunciable que puede presentarse en cualquier momento durante el proceso. Incluso, los foros apelativos pueden y deben levantar *motu propri*o la falta de parte indispensable, debido a que es un asunto que incide sobre su jurisdicción. *López García v. López García,* supra, págs. 64-65.

La Regla 16.1, *supra*, protege a las personas naturales o jurídicas ausentes en el pleito de los efectos de la sentencia y evita la multiplicidad de casos mediante un remedio efectivo y completo. La ausencia de una parte indispensable constituye una violación al debido proceso de ley. El mecanismo procesal de relevo de sentencia está disponible, cuando el dictamen se dictó en ausencia de una parte indispensable. Por tratarse de una violación a un derecho

constitucional, la sentencia es nula. *López García v. López García,* supra, págs.65-67.

### C.

La Regla 38.1 de Procedimiento Civil, 32 LPRA Ap. V, permite la consolidación de pleitos que comprendan cuestiones comunes de hecho o de derecho. El tribunal podrá ordenar una sola vista o juicio sobre cualquiera o todas las cuestiones litigiosas comprendidas en dichos pleitos. Igualmente, podrá ordenar la consolidación de todos los pleitos y dictar órdenes que eviten gastos o dilaciones innecesarias.

La consolidación evita la proliferación de las causas de acción entre las mismas partes, lograr la economía e impide la indeseable probabilidad de fallos incompatibles sobre un mismo asunto. *Crespo Quiñones v. Santiago Velázquez,* 176 DPR 408, 415-416 (2009).

El juzgador debe evaluar si la consolidación contribuye a una resolución justa, rápida y económica y si evita resultados inconsistentes entre disputas que presentan cuestiones similares de hechos y derecho. Los tribunales han considerado los perjuicios que la consolidación puede ocasionar a los litigantes y al sistema de impartir justicia. Además de evaluar la posibilidad de que los perjuicios no puedan evitarse mediante órdenes cautelares, prestando especial atención a las circunstancias particulares del caso. La consolidación promueve la buena administración de la justicia, la aceleración de disputas y la reducción de los costos de la litigación. *Vives Vázquez v. ELA,* 142 DPR 117, 136 (1996).

La posibilidad de perjuicios necesariamente no impide la consolidación. El tribunal deberá hacer un balance de los intereses involucrados y ponderar si existe un perjuicio real, versus el interés de lograr una solución justa, rápida y económica. Igualmente, tiene que considerar si las órdenes cautelares pueden evitar los efectos perjudiciales de la consolidación. La etapa procesal en la que se

solicita la consolidación es importante. La complejidad del caso es otro asunto a considerar, porque la consolidación es utilizada para atender adecuadamente los casos complejos. *Vives Vázquez v. ELA, supra,* págs. 137-138.

La decisión de consolidar requiere medir todas las consideraciones a su favor y en su contra. El tribunal debe prestar atención particular a los hechos ante su consideración y su relación con todos los casos que se solicita que sean consolidados. La determinación descansa en la sana discreción del juez de instancia, ejercida a base de la totalidad de las circunstancias en los casos cuya consolidación se solicita. El tribunal revisor, dará gran deferencia a la decisión del juez de instancia. La deferencia solo será obviada, cuando se omitió considerar algún factor importante o el tribunal abusó de su discreción. *Vives Vázquez v. ELA,* supra, págs.137, 139, 142.

La determinación judicial inicial sobre una solicitud de consolidación merece gran deferencia, cuando está basada en un análisis ponderado de la totalidad de las circunstancias de los casos cuya consolidación se solicita. *Hospital San Francisco v. Srio. de Salud,* 144 DPR 586, 594 (1997).

**D.**

El mandamus es un recurso extraordinario altamente privilegiado y discrecional. A través de este recurso, el tribunal ordena a una persona natural o jurídica o un tribunal de inferior jerarquía que cumpla o ejecute un deber ministerial en función del cargo que ocupa. La obligación que se ordena cumplir tiene que ser cierta, porque el mandamus no aplica a obligaciones discrecionales. El mandamus no procede cuando existen remedios adecuados y eficaces disponibles. La parte que lo solicita tiene que haber interpelado previamente al funcionario responsable de cumplir la obligación ministerial. No obstante, ese requisito puede obviarse

cuando es inútil o el deber reclamado es público. *Bhatia Gautier v. Gobernador,* 199 DPR 59, 75 (2017); *AMPR v. Srio. Educación,* 178 DPR 253, 263-266 (2010).

El deber ministerial no tiene que ser expreso. El tribunal tiene autoridad para interpretar, si surge o no claramente de la disposición aplicable. La decisión no depende de un juicio a priori fundado exclusivamente en la letra del estatuto. La determinación tiene que estar basada en un análisis de todos los elementos útiles a la función interpretativa, el examen paciente y riguroso basado en la letra de la ley y la evaluación de todos los elementos de juicio disponibles para descubrir el verdadero significado y propósito de la ley. La determinación final dependerá de la interpretación que haga el tribunal sobre el grado de discreción que confirió el legislador. *AMPR v. Srio. Educación,* supra, págs. 264-265.

### E.

La presentación oportuna de una moción de reconsideración ante el Tribunal de Primera Instancia paraliza los términos concedidos por ley para acudir en revisión judicial al foro apelativo intermedio. No obstante, la paralización solo ocurre cuando la moción de reconsideración cumple con los requisitos expuestos en la Regla 47 de Procedimiento Civil. El término para solicitar revisión comenzará a transcurrir nuevamente desde que se archivó la copia de la notificación de la resolución en la que se resolvió la moción de reconsideración. *Marrero Rodríguez v. Colón Burgos,* 201 DPR 330, 338 (2018).

### F.

Nuestra legislatura aprobó la Ley Núm. 154, *supra,* para adoptar la nueva visión mundial asumida en el siglo 21 hacia los animales. Las naciones de vanguardia reconocen que los animales son parte fundamental de nuestras vidas y de la sociedad. Los animales son vistos como seres sensitivos y dignos de un trato

humanitario y de derechos como el respeto, atención, cuidado y protección del ser humano. El legislador reconoció que la indignidad de la violencia es independientemente quien sea la víctima. A nuestra legislatura le quedó claro que una persona que abusa de los animales pudiera no tener empatía con otros seres vivos y tiene el riesgo de generar violencia hacia los demás. La legislatura de Puerto Rico concluyó que era preciso evitar el maltrato de animales y expresó la necesidad que nos destaquemos como una sociedad sensible y vanguardista. Exposición de Motivos.

La Ley 154, *supra,* define y establece una serie de delitos contra los animales y las penalidades que conllevan. Arts. 2.1 a 2.15, 5 LPRA secs. 1664-1678, Art. 2.17, 5 LPRA sec. 1680.

Según lo dispuesto en el Art. Núm. 2.16, 5 LPRA sec. 1679:

(a) Cuando una persona haya sido acusada por actos de maltrato a un animal, el tribunal o los funcionarios del orden público podrán, como medida cautelar y preventiva en beneficio del animal, remover u ordenar la remoción provisional del mismo en lo que se ventila el caso. De igual modo, el tribunal podrá tomar u ordenar aquellas medidas cautelares que entienda conveniente y necesarias para la protección y el bienestar del animal, incluyendo la emisión de una orden de protección. El animal deberá ser entregado al albergue del municipio de la residencia del guardián o a aquella organización privada que haya intervenido en la situación de maltrato, si esta lo solicitase.

(b) Si luego de un juicio en sus méritos o vista no se demostrase la existencia de maltrato hacia el animal, este deberá ser devuelto a su guardián.

Por su parte, el Art. 2.18, 5 LPRA sec. 1681, permite el embargo del animal confiscado para recuperar cualquier gasto incurrido en su cuidado mínimo. El costo de este cuidado deberá satisfacerse antes de que sea devuelto o después que el acusado haya sido encontrado no culpable o de que se hayan desestimado los cargos criminales. Si el costo no es satisfecho en el término establecido, su custodia será transferida inmediatamente a la agencia o a persona que tiene la custodia. No obstante, el costo del

cuidado seguirá siendo responsabilidad del guardián contra quien la agencia o persona con custodia podrá llevar una acción civil de cobro de dinero.

**G.**

La Junta de Confiscaciones está adscrita al Departamento de Justicia. Su función es custodiar, conservar, controlar y disponer de la propiedad adquirida por el Estado Libre Asociado de Puerto Rico, mediante el procedimiento de confiscación. Art. 3, 34 LPRA sec. 1724.

La confiscación es un proceso civil independiente de cualquier otro penal, civil o administrativo realizado contra el dueño o poseedor de los bienes ocupados. Los procesos de confiscación podrán llevarse a cabo y culminarse antes de que se acuse, declare culpable o absuelva el acusado. La confiscación va dirigida contra los bienes. La culpabilidad o inocencia del acusado no deberá tomarse en cuenta en el proceso de confiscación. Únicamente deberá tomarse en cuenta la adjudicación de los hechos en sus méritos. Lo determinante es si el bien se utilizó en la comisión de un delito independientemente del resultado de la acción criminal o de alguna otra naturaleza. Art. 8, 34 LPRA sec. 1724 (e).

El Gobierno de Puerto Rico podrá confiscar toda propiedad producto o utilizada en la comisión de todo delito grave o menos grave en los que la ley autorice la confiscación. Toda propiedad sujeta a una sentencia de confiscación será confiscada a favor del Gobierno de Puerto Rico. Art. 9, 34 LPRA sec. 1724 (f).

La ocupación de la propiedad sujeta a confiscación se llevará a cabo por la agencia del orden público o el funcionario encargado de la implantación de la ley por sí o por conducto de sus delegados, policías o agentes del orden público, mediante orden de un magistrado o tribunal competente o sin orden del tribunal en los casos expresamente contemplados. Art. 10, 34 LPRA sec. 1724g.

El Director Administrativo de la Junta podrá disponer que la propiedad ocupada permanezca bajo la custodia de la agencia que la ocupó hasta un máximo de 45 días. Luego de ese plazo ordenará el traslado a aquel lugar que provea mayor protección y seguridad. Art. 14, 34 LPRA sec. 1724k.

Las personas notificadas que demuestren ser los dueños de la propiedad podrán impugnar la confiscación dentro de los treinta días siguientes a fecha en que recibió la notificación, mediante una demanda contra el Estado Libre Asociado de Puerto Rico y el funcionario que autorizó la ocupación. La parte demandante deberá emplazar al Secretario de Justicia dentro de los quince (15) días siguientes a la presentación de la demanda. El tribunal ordenará una vista de legitimación, luego de contestada la demanda. Durante la vista el demandante tiene que demostrar que ejercía el control y dominio sobre la propiedad antes de la confiscación. Art. 15, 34 LPRA sec. 1724(l).

**III.**

Nos corresponde primero evaluar la procedencia de las alegaciones sobre falta de parte indispensable, ya que esa controversia incide directamente sobre nuestra jurisdicción.

El Municipio Autónomo de Bayamón es una parte indispensable, porque sin su presencia, la controversia no puede adjudicarse correctamente. Su omisión en el proceso tiene la grave consecuencia de lesionar los fondos públicos municipales, sin las garantías del debido proceso de ley.

El derecho del Municipio sobre los animales que la demandante alega que el Estado confiscó ilegalmente es más que claro. No es posible hablar de confiscación, cuando el expediente tiene evidencia incuestionable de que la demandante entregó los animales voluntariamente al Municipio.

El 15 de octubre de 2015, la demandante firmó un documento de Relevo de Responsabilidad con el Municipio. El documento se firmó el mismo día que se diligenció una orden judicial de allanamiento y que los animales fueron ocupados por violación a la Ley Núm. 154, *supra.* La demandante reconoció en ese documento que fue orientada y que estaba consciente de la Ley para el bienestar y protección de los animales de Puerto Rico, por lo que hizo entrega voluntaria al Municipio de 9 caballos y 4 burros y eximió a la ciudad de Bayamón y a sus empleados de toda responsabilidad. A partir del 15 de octubre de 2015, el Municipio ha tenido la custodia y posesión de los animales y ha incurrido en los gastos que eso conlleva. El Relevo de Responsabilidad nos hace pensar que la demandante incluso pudo haberle transmitido al Municipio la titularidad de los animales. No obstante, del documento no surge intervención alguna del Estado con los animales. Véase, pág. 21 del apéndice. El interés del Municipio es inmediato y real, porque evidenció que desembolsó unos $371,935.90 de sus fondos para el mantenimiento de los animales.

El TPI erró al no desestimar la demanda, a pesar de que es evidente que el Municipio es una parte indispensable. Al tribunal le es imposible hacer justicia y conceder un remedio completo, sin lesionar los derechos del Municipio. La ausencia del Municipio Autónomo de Bayamón conlleva la nulidad de toda acción y procedimiento incluyendo la sentencia, porque el tribunal no tiene jurisdicción para atender el caso. La falta de jurisdicción nos obliga a ordenar la desestimación de la demanda.

El Gobierno de Puerto Rico alega que el tribunal tiene el deber ministerial de atender la solicitud de reconsideración que presentó el 7 de septiembre de 2016. No obstante, es inmeritorio pasar juicio sobre ese error, debido a que ordenamos la desestimación de la demanda.

**IV.**

Por lo antes expuesto, se desestima la demanda y se declara nulo todo procedimiento y decisión dictada en el caso, porque el tribunal no tiene jurisdicción para atender un caso en ausencia de falta de parte indispensable.

Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.


Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones